**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MICHAEL A. OIEN,<br><br>    Plaintiff,<br><br>vs.<br><br>HOME DEPOT U.S.A., INC. d/b/a THE HOME DEPOT and STANLEY ACCESS TECHNOLOGIES LLC,<br><br>    Defendants. | Case No.:  20-cv-01982 (NEB-ECW)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Michael A. Oien, pursuant to Federal Rule of Civil Procedure 56, provides the following Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment.

## I.   <u>INTRODUCTION</u>

On April 9, 2020, Plaintiff Michael Oien was exiting a Home Depot after purchasing construction supplies.  Home Depot employee Fred Daum assisted Plaintiff by pushing one flat cart through the automatic exit doors (the "Doors"), while Plaintiff followed behind him with the other cart.  The Doors opened without issue as Daum approached, and he exited the building without issue.  However, the Doors closed prematurely as Plaintiff approached, and struck Plaintiff's right shoulder as he attempted to exit (the "Accident").

Plaintiff immediately experienced severe pain on the top and side of his shoulder following the Accident.  He was unable to lift his right arm to put his keys

in his truck's ignition.  When he got home, he was unable to unload his supplies and required help from a friend.  He contacted the VA that day, and went in for x-rays the next day.  An MRI taken April 15, 2020 revealed a full-thickness, full-width tearing of the supraspinatus tendon.  Plaintiff has required significant medical treatment and has lost income as a result of the Accident; he's also endured pain and suffering.

This Accident should not have happened.  Even lay-people armed only with common sense understand that an automatic door does not ordinarily close on an innocent patron absent negligence.  Numerous courts recognize this principle as well.  Plaintiff does not require expert testimony to make his *prima facie* case against either Defendant, especially not his negligence claims under the doctrine of res ipsa loquitur.

Accordingly, fact issues remain precluding summary judgment in either Defendant's favor.  Plaintiff respectfully requests the Court deny Defendants' respective motions.

## II.    <u>STATEMENT OF FACTS</u>

Plaintiff brought claims against Defendants Stanley Access Technologies, LLC ("Stanley") and Defendant Home Depot U.S.A., Inc. ("Home Depot") relating to malfunctioning automatic doors located at Home Depot (the "Doors").  Stanley manufactured and serviced the Doors.  (*See* Doc. 9 at ¶ 3, as referenced in Home Depot's memo. at 1)

On April 9, 2020, Plaintiff Michael Oien was exiting the Home Depot located at 2630 White Bear Avenue North in Maplewood, Minnesota after purchasing lumber and sheetrock for a home project. (Affidavit of Michael Oien, ¶ 1) Plaintiff had loaded two flat carts with his supplies. Home Depot employee Fred Daum assisted Plaintiff by pushing one flat cart through the automatic exit Doors, while Plaintiff followed behind him with the other cart. (*Id.* at ¶ 2) The Doors opened as Daum approached, and he exited the building without issue. However, the Doors closed prematurely as Plaintiff approached, and struck Plaintiff's right shoulder as he attempted to exit. (*Id.* at ¶ 3)

This is not how automatic doors are intended to function. Automatic doors typically open as a person approaches, remain open while the person passes through, then close once the door area has been vacated. (*Id.* at ¶ 4) The Doors functioned that way during Plaintiff's previous visits to Home Depot, but malfunctioned the day of the Accident. (*Id.* at ¶ 4)

Stanley's brief claims—as an undisputed fact—that Plaintiff "literally walked into the side of the door." (Stanley Memo. at 6) Stanley offers no support for this strange contention other than an expert report (which contains no such language). It is unclear how Plaintiff could even accomplish this while pushing a cart. In truth, Plaintiff was directly behind Daum, and was pushing his heavy cart along the same path. Plaintiff only made contact with the Doors because they closed as he was passing through them. (*Id.* at ¶ 5) At worst, this fact is in dispute.

Immediately after the Accident, Plaintiff felt severe pain on the top and side of his right shoulder. (*Id.* at ¶ 6) At deposition, Plaintiff testified "my arm was just killing me. Like pain I've never had before." (Declaration of Nathaniel Weimer ("Weimer Decl."), Ex. 1 lines 4-8) He walked to his truck in the parking lot, but was unable to raise his right arm to put the keys in the ignition. He had to use his left arm. (Oien Aff., ¶ 7) When he got home, he was unable to unload his supplies and required help unloading from his friend Don McGruder (*Id.* at ¶ 8)

Plaintiff contacted the VA the day of the Accident, and went in for x-rays the following day. (*Id.* at ¶ 9; Weimer Decl., Ex. 2 at 3-4) An MRI taken April 15, 2020 revealed a full-thickness, full-width tearing of the supraspinatus tendon. (Weimer Decl., Ex. 2 at 1-2)

Plaintiff has required significant medical treatment and incurred medical bills, lost income, and endured pain and suffering as a result of the Accident. (Oien Aff., ¶ 10) Plaintiff timely identified medical personnel in his Initial Disclosures who will testify in accordance with Plaintiff's medical records, including Dr. Allan Hunt of the VA and Dr. Peter Parten of Summit Orthopedics Ltd. (Weimer Decl., Ex. 3 at 2-3) Plaintiff produced these medical records as part of his Initial Disclosures. (*Id.* at 3) The record contains ample evidence to allow a jury to conclude Plaintiff's claimed injuries resulted from the Accident. (*See, e.g.*, Weimer Decl., Ex. 3)

### III.  **LEGAL ARGUMENT**

As an initial matter, Plaintiff notes that his claims against each Defendant may involve different legal theories and different application of the facts of the

case.  Defendant Stanley serviced the Doors, while the Doors were located on Defendant Home Depot's premises.  Defendants owed differing duties of care to Plaintiff, as explained below.  Accordingly, dismissal of claims against one Defendant does not mandate dismissal of claims against the other Defendant. Notwithstanding, Plaintiff respectfully requests the Court deny the summary judgment motions of both Defendants.

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(a), the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"Courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment.  Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses.  Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of

evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … defer considering the motion or deny it; allow time to obtain affidavits or declarations or to take discovery; or issue any other appropriate order."  Fed. R. Civ. P. 56(d).

## B. A Reasonable Jury Could Find Each Defendant Negligent Under *Res Ipsa Loquitur* Doctrine

Both Stanley and Home Depot may be found negligent under the doctrine of res ipsa loquitur.  "The three elements of res ipsa loquitur are that the event must not generally occur unless someone is negligent, must be caused by an instrumentality within the exclusive control of the defendant, and must not have been due to any voluntary action or contribution of the plaintiff."  *Leuer v. Johnson*, 450 N.W.2d 363, 364 (Minn. Ct. App. 1990) (citing *Spannaus v. Otolaryngology Clinic*, 242 N.W.2d 594, 596 (1976)).

Neither Stanley nor Home Depot address Plaintiff's res ipsa loquitur claim in their summary judgment memoranda.  For this reason alone, Defendants' motions should be denied with regard to Plaintiff's negligence claims.  Plaintiff will nonetheless include analysis of this issue, as his position is fully supported by applicable law.

### 1.  Automatic doors do not close on pedestrians absent negligence.

Courts have applied res ipsa loquitur in factually identical cases involving malfunctioning automatic doors to satisfy the first element—**even where plaintiffs did not produce expert testimony!**  In *Pritchard v. Stanley Access Technologies, LLC*, incidentally involving automatic doors owned by Wal-Mart but manufactured by Stanley, a federal court applied the doctrine in the summary judgment setting even without expert testimony:

> A jury applying common sense might conclude that an automatic door malfunction does not occur absent *some* negligence … While the equipment may be technical and sophisticated, the majority of jurisdictions, including at least one court in Massachusetts, have invoked the res ipsa loquitur inference when automatic doors cause injury to pedestrians.
>
> Expert testimony is not required to show negligence on the part of Defendants.

No. CIV.A. 08-11762-DPW, 2011 WL 309662, at 3-4 (D. Mass. Jan. 27, 2011) (Weimer Decl., Ex. 4)  The court goes on to cite an abundance of cases from various jurisdictions reaching the same conclusion.[1]  The common theme running

---

[1] "*See, e.g., Stone,* 353 F.3d at 160–61 (holding that plaintiff who was allegedly injured when automatic doors closed on her was entitled to *res ipsa loquitur* inference); *Balistreri v. Richard E. Jacobs Grp., Inc.,* 322 F.Supp.2d 972, 978 (E.D.Wis.2004) ("automatic sliding doors do not ordinarily close on a person in the absence of negligence"); *Brewster v. United States,* 542 N.W.2d 524, 532 (Iowa 1996) ("We agree with the majority of courts that have concluded an automatic door malfunction does not occur in the absence of negligence. We think it is within the common experience of law people to come to this conclusion"); *Brown v. Scrivner, Inc.,* 241 Neb. 286, 488 N.W.2d 17, 19 (Neb.1992) ("Automatic doors do not, in the ordinary course of things, cause injury to those who pass through them."); *Landmark Hotel & Casino, Inc. v. Moore,* 104 Nev. 297, 757 P.2d 361, 364 (Nev.1988) (per curiam) ("Automatic sliding glass doors ... are ubiquitous, affording the public safe ingress and egress to countless facilities on a daily basis. What happened to [plaintiff] is unusual; it

through these cases is a simple one—automatic doors should not close on pedestrians as they pass through.  No expert testimony is required to demonstrate this obvious truth.

Plaintiff is unaware of any Minnesota cases addressing res ipsa loquitur in the context of automatic doors.  "When Minnesota caselaw does not address an issue, [courts] may look to other jurisdictions for guidance."  *In re Lawrence*, 954 N.W.2d 597, 603 (Minn. 2020).  Accordingly, Plaintiff requests that this Court consider the many cases cited above, and apply that same reasoning to this factually-identical case.  Plaintiff has met the first element of res ipsa loquitur.

### 2.  The Doors were exclusively controlled by Defendants

When automatic doors are owned by one entity and serviced by another, they are under the exclusive control of both entities for the purposes of res ipsa loquitur.

Again, numerous courts have reached this conclusion.  In *Stone v. Courtyard Management Corp.*, 353 F.3d 155, 160 (2d Cir. 2003), the court

---

strongly suggests a malfunction attributable to negligence."); *Rose v. Port of N.Y. Auth.,* 61 N.J. 129, 293 A.2d 371, 375 (N.J.1972) ( "Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally, without sustaining injury. What happened to the plaintiff here is fortunately unusual and not commonplace. It strongly suggests a malfunction which in turn suggests neglect."); *Tarara v. Dayton Hudson Corp.,* 36 Mass.App.Ct. 942, 629 N.E.2d 1352, 1353 (Mass.App.Ct.1994) (rescript) (applying res ipsa loquitur even when "the defendant did not know of the defect [and] there was no indication prior to the incident that the door was defective")." *Id.* at 4.

considered automatic doors owned by Marriot but maintained and repaired by

Dor-O-Matic, and found the doors to be in the exclusive control of both:

> Where, as here, one or some or all of multiple interdependent
> defendants are in control and burdened with supervision of an injury-
> causing device, it is for them to explain their action and conduct
> when it malfunctions with resultant damage to another … Marriott
> and Dor–O–Matic were both "burdened with supervision" of the
> automatic doors and a res ipsa loquitur inference could have been
> drawn against either or both.

*Pritchard v. Stanley Access Technologies, LLC* reiterates this principle concisely:

"Even assuming that Stanley Access performed maintenance and repair service

on the door only from time to time, this circumstance would not remove the doors

from Wal–Mart's control."  (Weimer Decl., Ex. 4 at 3)  The *Pritchard* court again

cites to a variety of cases drawing the same conclusion.[2]

As with element one, Plaintiff is unaware of Minnesota cases addressing

this precise issue.  Thus, the Court may look to other jurisdictions for guidance.

*In re Lawrence*, 954 N.W.2d 597, 603 (Minn. 2020).

---

[2] "*See Stone v. Courtyard Mgmt. Corp.,* 353 F.3d 155, 160 (2d
Cir.2003) ("[Owner and maintenance company] were both 'burdened with
supervision' of the automatic doors and a *res ipsa loquitur* inference could have
been drawn against either or both"); *see also Meny v. Carlson,* 6 N.J. 82, 77 A.2d
245, 250 (N.J.1950) ("The word 'exclusive' when used to define the nature of the
control necessary to invoke the doctrine of *res ipsa loquitur* does not connote that
such control must be several and the defendant singular and never plural."); *Ruiz
v. Otis Elevator,* 146 Ariz. 98, 703 P.2d 1247, 1250 (Ariz.Ct.App.1985) ("although
the doctrine speaks of 'exclusive control' the application of the doctrine against
two or more defendants where there is joint control is appropriate."). Given that
the doctrine of *res ipsa loquitur* may apply against two defendants when there is
joint control, "it is for the jury to say whether either or both had control." *Greet v.
Otis Elevator Co.,* 187 A.2d 896, 898 (D.C.1963)."  (*Id.*)

The facts of the instant case mirror the cases discussed above.  At the time of the Accident, it is undisputed that the Doors were owned by Defendant Home Depot but serviced by Defendant Stanley.  Accordingly, the above analysis applies neatly, and merits the same conclusion—both Stanley and Home Depot had exclusive control of the Doors for the purposes res ipsa loquitur.  Plaintiff has met the second element of res ipsa loquitur.

### 3.  The Accident was not caused by voluntary actions by Plaintiff

The third element of res ipsa loquitur is proven by Plaintiff's own testimony and medical records.  The Accident occurred as Plaintiff was attempting to exit Home Depot through the Doors.  He was pushing a heavy flat cart, and following the path of the Home Depot employee in front of him.  Plaintiff only made contact with the Doors because they closed as he was passing through them.  (Oien Aff., ¶¶ 1-3)  Plaintiff took no voluntary action to cause the Accident.

Moreover, Plaintiff was significantly injured by the Accident.  Plaintiff went to the VA the day after the Accident, and the medical records note his visit was due to the Accident (Oien Aff at ¶ 9; Weimer Decl., Ex. 2 at 3-4)  An MRI taken April 15, 2020 revealed a full-thickness, full-width tearing of the supraspinatus tendon. (Weimer Decl., Ex. 2 at 1-2)   It defies common sense that he would cause this collision voluntarily.

Defendants provide no evidence to the contrary.  Stanley does allege that Plaintiff "literally walked into the side of the door."  (Stanley Memo. at 6)  But this confusing allegation is supported only by an expert report authored by a non-

witness, which itself contains no such language. This certainly does not establish an undisputed fact.

At a minimum, this presents a genuine dispute of a material fact, which is to be viewed in the light most favorable to Plaintiff. A jury could reasonably conclude that Plaintiff did not voluntarily cause the Accident.

Plaintiff has met all three elements of res ipsa loquitur. Summary judgment is thus inappropriate under Rule 56. For the above reasons, Plaintiff respectfully requests that the Court deny Defendants' motions for summary judgment on Plaintiff's negligence claims.

## C. A Reasonable Jury Could Find Home Depot Liable to Plaintiff Under a Negligence Theory

Under Minnesota law, a negligence claim requires "(1) a duty on the part of the defendant, (2) a breach of that duty, (3) that the breach of duty be the proximate cause of the Plaintiff's injury, and (4) an actual loss or damage as a result of the injuries." *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982). "Negligence claims involve questions of fact and are generally not susceptible to summary adjudication." *See, e.g.*, *Bondy v. Allen*, 635 N.W.2d 244, 248 (Minn. Ct. App. 2001).

Plaintiff has established his prima facie case against Defendant Home Depot, and reasonable jury could easily find Home Depot liable to Plaintiff on the record evidence.

### 1. Home Depot owed Plaintiff a duty of care to reasonably inspect and maintain its premises

Element one is met as a matter of law.  "Landowners owe guests a duty to inspect and repair the premises and, at a minimum, to warn persons using the premises of unreasonable risks of harm."  *Sullivan v. Farmers & Merchants State Bank of New Ulm*, 398 N.W.2d 592, 594-95 (Minn. Ct. App. 1986).  "The landowner's duty of reasonable care includes an ongoing duty to inspect and maintain property to ensure entrants on the landowner's land are not exposed to unreasonable risks of harm."  *Olmanson v. LaSueur County*, 693 N.W.2d 876, 880-881 (Minn. 2005).

Defendant Home Depot concedes this duty in its brief.  (Home Depot Memo. at 6)  This element should not be in dispute.

Yet Defendant Home Depot also argues that it only owed Plaintiff a duty of care if it had notice of the dangerous condition.  Not so.  The Supreme Court's decision in *Olmanson* provides clear guidance as to how notice of a defect affects the duty to reasonably inspect:

> **If a reasonable inspection does not reveal a dangerous condition**, such that the landowner has neither actual nor constructive knowledge of it, under the theory of negligence the landowner is not liable for any physical injury caused to invited entrants by the dangerous condition.

693 N.W.2d at 881 (emphasis added).  In other words, the question of notice only becomes relevant once a "reasonable inspection" is performed.  Lack of notice does not relieve a landowner of the duty to reasonably inspect.

This makes sense. Landowners who fail to reasonably inspect their property will often lack notice of dangerous conditions.  That is why the duty to reasonably inspect is owed regardless of notice.  Under Home Depot's interpretation, it could simply stop inspecting its premises.  Without inspections, it would never have notice of any dangerous condition and would avoid liability completely.

But of course that is not how the law operates, as the Minnesota Supreme Court explained in *Olmanson* (cited above).  Home Depot owed Plaintiff a duty of care to reasonably inspect its premises.  Plaintiff has met the first element of negligence against Home Depot as a matter of law.

### 2.  A genuine question of material fact exists for whether Home Depot breached its duty of care

The testimony of Home Depot's own corporate designee creates a question of fact as to whether it breached its duty of care to reasonably inspect and maintain the Doors.  For its deposition under Rule 30(b)(6), Home Depot produced assistant store manager Angela Peterson.  (Weimer Decl., Ex. 5).  The testimony shows that Home Depot has no idea what, if any, inspection took place on the day of the Accident.

Ms. Peterson stated that generally, the assistant store manager or store manager who opened the store would perform safety checks of the Doors.  But Home Depot has no knowledge or records showing whether tests were performed on the day in question:

```
Q Okay. On the day of the accident, did you perform daily
tests?

A I don't remember.

Q Okay. Is there any paperwork or documents that would show
whether these daily tests were done?

A Not that I'm aware of.

Q So when you would perform these tests, you wouldn't --
you wouldn't keep a log of when you did the tests or
anything like that?
A  No.
```

(Weimer Decl., Ex. 5 at 18:10-19).  In fact, Ms. Peterson could not

remember whether she even opened the store on the date of the Accident.  (*Id.*

at 19:2-9)  Simply put, Home Depot has no knowledge of whether its employees

performed safety checks on the Doors that morning.  Based on the evidence, as

well as the fact that the Accident occurred, a jury could easily conclude that

safety checks were not performed.

Additionally, the daily testing described by Ms. Peterson would not have

revealed the malfunction that caused the Accident.  Home Depot's testing of the

Doors only included "walking in front of" the Doors from the interior of the building

at some unknown distance to make sure the Doors opened.  (*Id.* at 24:5-24:22)

But on the date of the Accident, there was no problem with the doors opening—

they opened flawlessly as Home Depot employee Daum approached.  The

problem was that the Doors then closed prematurely on Plaintiff.

One reasonable way to test this would have been to stand in the middle of

the Doors for an extended period of time to make sure the Doors wouldn't close

while that space was occupied.  But Home Depot did not perform such a test as part of its safety process.  (*Id.* at 25:3-8)  Had Home Depot done so on the date of the Accident, the Accident could have been avoided.

Further, Home Depot did not follow the safety checklist created by Stanley to properly inspect the Doors.  Stanley instructed Home Depot to test the Doors daily using the "Daily Safety Check Sheet."  (Weimer Decl., Ex. 6 at 2)  This is shown by a label on the Doors themselves.  (*Id.*)  Yet when presented with this label, Ms. Peterson had no familiarity with any "Daily Safety Check Sheet" from Stanley used by Home Depot.  Nor did Home Depot have *any* checklist relating to testing the Doors.  (Weimer Decl., Ex. 5 at 22:16-23:6)

Finally, Ms. Peterson did not know whether she or other Home Depot employees received any training on how to properly test the Doors.  (*Id.* at 26:2-25)

In summary, Home Depot doesn't know whether its employees performed safety checks on the day of the Accident.  It did not generate logs showing whether safety checks were completed.  It did not test in accordance with Stanley's "Daily Safety Check Sheet," nor was it even familiar with this document. It did not have its own internal checklist for testing the Doors.  It did not memorably train its employees in how to properly test the Doors.  And it did not perform the simple test that could have prevented the Accident—standing in the Doors' path for a period of time.  Based on this, a jury would have ample reason

to conclude that Home Depot breached its duty to reasonably inspect its premises.

Such a conclusion does not require expert testimony—"Where the acts or omissions complained of are within the general knowledge and experience of lay persons, expert testimony is not necessary to establish a standard of care." *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271, 279.  Lay people can understand that automatic doors should open as someone approaches, and should not close until the area is vacant.  Lay people can understand that daily safety checklists should be followed daily.  Lay people can understand that employees should be trained on how to perform safety checks. And lay people can understand that simply standing in the doorway would reveal whether automatic doors close prematurely.

Home Depot's brief misstates Plaintiff's burden of proof.  To establish negligence by Home Depot, Plaintiff need not give "a technical explanation of how the door works, what internal parts or mechanisms were malfunctioning, or how the door was improperly designed."  (Home Depo memo. at 8)  To defeat summary judgment, Plaintiff need only create a question of fact as to whether Home Depot breached its duty of care to reasonably inspect and maintain the premises.  As explained above, Plaintiff has done so, even without expert testimony.

Moreover, Home Depot's position is at odds with its own actions leading up to the Accident.  Home Depot's brief suggests that daily maintenance of the

Doors requires technical, expert knowledge.  Yet its employees were expected to conduct these tests without checklists from Stanley, checklists from Home Depot, or any sort of training.  Home Depot cannot have it both ways—and its approach to safety inspections shows that no expert knowledge was necessary.

### 3.  Plaintiff has established that Defendants' negligence caused his injuries

Element three of a negligence claim requires Plaintiff to introduce evidence establishing a reasonable basis to conclude Defendants' negligence proximately caused his injuries.  *Sage as Trustee for Sage v. Bridgestone Americas Tire Operations, LLC*, 514 F.Supp.3d 1081, 1089 (D. Minn. 2021) (citing *Abbett v. City of St. Louis*, 474 N.W.2d 431, 434 (Minn. Ct. App. 1991)).  Proximate cause is a question of fact for the jury.  However, when reasonable minds could only reach one conclusion, the existence of proximate cause is a question of law."  *Id.*

"Causation need not be proven by direct evidence alone as circumstantial evidence may establish causation … A plaintiff may offer circumstantial evidence which would allow a reasonably jury to find that her theory fairly preponderates over others."  *Id.*

Here, Plaintiff has produced his medical records and bills, including records from the VA in the days immediately following the Accident.  (*See, e.g.*, Weimer Decl., Ex. 2)  He disclosed in his Initial Disclosures the medical providers he saw following the Accident, who will provide testimony consistent with the medical records, including Dr. Allan Hunt of the VA and Dr. Peter Parten of

Summit Orthopedics Ltd.  (Weimer Decl., Ex. 3)  Plaintiff can draw a clear connection between the Accident and his injuries.

Plaintiff also provides circumstantial evidence that his injuries were caused by the Accident.  Immediately following the Accident, he experienced severe pain on the top and side of his shoulder following the Accident.  He was unable to lift his right arm to put his keys in his truck's ignition.  When he got home, he was unable to unload his supplies and required help from a friend.  (Oien Aff., ¶¶ 6-8)  All of this would allow a jury to reasonably conclude Plaintiff injuries were caused by the Accident.

Stanley's brief attempts to cast doubt on how the Accident occurred.  It claims "the record evidence shows that the automatic door was operating properly and that Plaintiff injured his shoulder by not paying attention and walking into the side of the door."  (Stanley memo. at 13)  As explained before, this contention is unsupported by the record.  It is also contradicted by Plaintiff's testimony and medical records.  Finally, it flies in the face of common sense—how could Plaintiff run himself into the side of the Doors while pushing a cart from behind?

Proximate cause is a question of fact for the jury.  *Sage as Trustee for Sage v. Bridgestone Americas Tire Operations, LLC*, 514 F.Supp.3d at 1089.  To be decided as a matter of law, there must be "only one reasonable conclusion."  *Id.*  Here, a jury could reasonably conclude that the Accident occurred as Plaintiff alleged, especially given the lack of a credible alternative.  Even if a jury could be

persuaded by Stanley's theory, it is certainly not the only reasonable conclusion. Accordingly, Plaintiff has met his burden of proof and summary judgment is inappropriate.[3]

Stanley's liability to Plaintiff on a negligence theory, including res ipsa loquitur, also requires a showing of proximate causation. Section (III)(C)(3) of this brief addressing proximate causation applies to Plaintiff's claims against Stanley as well as those against Home Depot.

### 4. Plaintiff suffered actual loss or damages as a result of his injuries

To prove the fourth element of negligence, Plaintiff must show he suffered actual loss or damages as a result of his injuries. Here, Plaintiff has produced medical bills and wage information demonstrating his loss. He has also testified as to his pain and suffering. Defendants do not dispute this element. Accordingly, Plaintiff has met his burden of proof as to this element of negligence.

### 5. The Court may deny summary judgment when facts are unavailable to the nonmovant

Under Rule 56(d), a court may deny a motion for summary judgment when facts are unavailable to the nonmovant. Here, Plaintiff could have no personal knowledge of what safety inspections Home Depot took on the date of the Accident—information with great relevance to the case. Only Home Depot has

---

[3] Stanley's liability to Plaintiff on a negligence theory, including res ipsa loquitur, requires a showing of proximate causation. Section (III)(C)(3) of this brief applies to Stanley as well as to Home Depot.

that information.  Plaintiff sought to obtain such evidence from Home Depot through discovery, including a corporate deposition, but Home Depot often failed to meaningfully answer relevant questions.  See Section 2, above.

Home Depot should not benefit from this behavior.  Accordingly, Plaintiff requests the Court consider Rule 56(d) when record evidence is sparse as to Home Depot's safety inspections.

## D. Plaintiff Does Not Require Expert Testimony to Establish His Strict Product Liability Claim Against Stanley

Stanley seeks to dismiss Plaintiff's Strict Liability Claims against it, arguing that Plaintiff requires expert testimony to support his claims.  (Stanley Memo. at 10-11)  It correctly states that "expert testimony is necessary to get a product-liability claim past summary judgment when the product at issue and any of its inner workings are beyond the ken of a jury."  (*Id.*, citing *Markel v. Douglas Technologies Group, Inc.*, 968 F.3d at 890)  Yet it fails to explain why a lay person would need expert testimony to understand the function of a simple automatic door.

The Doors feature sensors just above the sliding doors themselves, on both the exterior and interior of the Home Depot building.  (Weimer Decl., Ex. 7)  The sensors presumably tell the sliding doors to open as someone approaches, and to close when they leave—this is how automatic doors typically function.  (Oien Aff., ¶ 4)  If automatic doors close on a pedestrian as he is traveling through, the doors have malfunctioned.

20

As Stanley states, Plaintiff's claims require a showing that the Doors were defective and unreasonably dangerous for their intended use. (Stanley Memo. at 11) Here, the Doors closed prematurely as Plaintiff was exiting, causing him injury. (*See* Oien Aff.) A reasonable jury applying common sense could conclude the Doors were defective and dangerous—without needing to speculate.

Stanley cites to *Markel* to support its position, as well as *Atwater Creamery Co. v. Western Nat. Mut. Ins. Co.*, 366 N.W.2d 271 (Minn. 1985). Neither case is factually similar, and neither case provides meaningful support for Stanley's argument.

*Markel* involved an ATV racing wheel that came off during the final lap of a race. The court described the technical considerations involved in determining whether the wheel was defective, and found them beyond the knowledge of a lay jury:

> Markel's claim depends on an assessment of the appropriate strength and design of aluminum ATV racing wheels. Such an assessment necessarily involves complex mathematical and engineering concepts that a lay juror cannot be expected to understand without the help of an expert.

*Id.* at 890.

This analysis makes sense—juries certainly should not be expected to understand "complex mathematical and engineering concepts" without the help of an expert. But such understanding is not required in the instant case. Here, jurors must merely understand what they have likely observed countless times in

their lives: automatic doors should not close on a pedestrian.  If they do, they are defective and dangerous.

Similarly, *Atwater Creamery* provides little guidance for the case at bar. The dispute there centered on whether an insurance agent had properly identified gaps in insurance coverage and properly advised a client.  366 N.W.2d at 274.  The court held that expert testimony was required to establish an insurance agent's standard of care because "insurance agents are professionals in a field that few lay persons know well."  *Id.* at 279.  The court compared this to establishing standards of care for attorneys or doctors, two other professions that lay jurors are unlikely to know well.  *Id.*

*Atwater Creamery* is not a products liability case, and thus does not apply. Moreover, *Atwater Creamery* involves a technical profession unfamiliar to lay people.  *Atwater Creamery* has no application to the instant case, a products liability claim requiring only common sense from a jury.

Stanley has failed to provide relevant caselaw justifying dismissal of Plaintiff's strict products liability claim against it.  Accordingly, summary judgment on this basis is inappropriate.  Plaintiff respectfully requests Stanley's motion be denied.

## **<u>CONCLUSION</u>**

The facts of this case are simple.  Plaintiff was injured attempting to exit a Home Depot when automatic doors closed on him prematurely.  Evidence supports a finding of negligence against each Defendant.  A reasonable jury

could find Stanley liable to Plaintiff. A reasonable jury could find Home Depot liable to Plaintiff. Or a reasonable jury could conclude that Plaintiff fabricated his claims and find no liability at all. But the record evidence mandates that this decision be made by a jury.

For the above reasons, Plaintiff respectfully requests the Court deny Defendants' respective motions for summary judgment.

**TEWKSBURY & KERFELD, P.A.**

Dated: January 27, 2022        By: /s Nathaniel J. Weimer_____
                                            Michael D. Tewksbury (#108832)
                                            Nathaniel J. Weimer (#395728)
                                            88 South Tenth Street, Suite 300
                                            Minneapolis, MN 55403
                                            Phone: (612) 334-3399
                                            Fax: (612) 334-5797
                                            mtewksbury@tkz.com
                                            nweimer@tkz.com

                                            ***Attorneys for Plaintiff Michael Oien***